Myron M. NEWBY and Nada Newby, Plaintiffs,

v.

Harold L. HARRIS, Defendant.

Patricia Ann NEWBY, Plaintiff,

v.

Harold L. HARRIS, Myron M. Newby and Nada Newby, and Matanuska Valley Farmers Co-operating Association, a corporation, Defendants.

Nos. A–8106, A–8514.

District Court, Alaska
Third Division, Anchorage.

March 15, 1955.

Bailey E. Bell, Anchorage, Alaska, for plaintiffs.

Arthur D. Talbot, Anchorage, Alaska, for defendants.

FOLTA, District Judge.

The foregoing cases were consolidated for trial. In the first case the plaintiffs seek to recover for potatoes which they allege the defendant took, as buyer, from the plaintiffs' farm, over and above what he has agreed to pay for. The complaint alleges that the defendant took 260,000 lbs. of potatoes, whereas the defendant alleges that he took but 124,000 lbs.

In the second case the plaintiffs' children seek to foreclose lien claims aggregating $2,900 for services which they allege they rendered in connection with the raising of vegetables and potatoes on the Newby farm.

The Newbys and Harris entered into a contract on June 19, 1952, under which Myron Newby and Harris agreed to contribute their services, etc., in growing, harvesting, and marketing the produce of the Newby farm and divide the profits equally. Each was authorized to hire and discharge help. On July 15 this contract was terminated and a new one was entered into, but it was not reduced to writing and executed until July 30, 1952. This contract recites that Newby owes Harris $9,264 and provides that one-half of the income from the Newby farm shall be withheld by Harris and applied on this indebtedness; that Harris will buy the potato crop at 4¢ a lb. for field run potatoes, and that Newby will thereafter assume the expense of operating the farm. Harris was to dig the potatoes and weigh them at the Matanuska Experiment Station.

While Harris was digging the potatoes a dispute arose between them, Newby contending that Harris was discarding too many marketable potatoes. Disinterested witnesses testified that it looked as though about one-third of the potato crop was left lying on the ground after Harris took what he wanted. New-

by dug three rows of potatoes, weighed them, and estimated that the crop of field run potatoes amounted to 260,576 lbs., which Harris was bound to take, whereas Harris insists that but 124,920 lbs. were marketable and the remainder diseased, sunburned, and too small. Newby admits that the difference between the quantities named was not left lying on the ground, but insists that the defendant cheated him in reporting the weight of the truckloads of potatoes taken from the farm. This accusation appears to be based on Harris' failure to weigh the potatoes at the Matanuska Experiment Station, as required by the contract. Harris testified that the reason he did not have the potatoes weighed there was because the scale was inadequate for many, or most, of the truckloads hauled from the Newby farm, and that therefore he had them weighed on the scale of the Matanuska Valley Farmers Co-operating Association, which was given a preferential right to buy the potatoes. Since it appears that in either instance the weighing would have been done by Harris alone, unless Newby or his agent chose to accompany him, I am unable to see how Newby could, by Harris' weighing the potatoes on the scale of the Association, have been prejudiced. Had Harris been so disposed, he could have cheated as readily at the Experiment Station, but the evidence on this issue is wholly insufficient to sustain the plaintiffs' contention, and it is incredible that Harris would leave more potatoes on the ground than he took. It may be argued that he had a motive to select rather than take the potatoes as they came from the field, but since approximately 30% of the potatoes were graded by the Association as No. 2 it would not appear that his selection was with an eye to No. 1 grade.

▪ I find that by "field run potatoes" the parties meant marketable potatoes and that the potatoes discarded amounted to one-quarter of the crop of marketable potatoes.

▪ The lien claims of the children are attacked by Harris as fraudulent and collusive, and he contends that they are void because the claimants failed to comply with the provisions of Chapter 79, S.L.A.1949, requiring the presentation of an account of the services rendered and the amount due within 30 days after the indebtedness accrued. It is undisputed that no attempt was made to comply with this provision. It also appears that Harris had no actual notice of these claims before they were filed at the office of the Recorder on September 25th. I am of the opinion that this omission is fatal as against Harris, cf. Lane v. Gilbertson, 9 Cir., 160 F.2d 211; Howard v. Branchawk Mining Co., 7 Alaska 117; Johnson v. Halls, 7 Alaska 638, 639. Stripped of their lien characteristics, they become ordinary claims. Since the joint venture ended July 15, Harris, as purchaser of the potatoes, would not be liable for services rendered thereafter, and therefore, assuming the validity of these claims, they would have to be apportioned as between the periods antedating and succeeding July 15. The state of the evidence is such as to preclude such apportionment.

▪ The second contract stipulates that Newby then owed Harris $9,264. It is admitted that to this should be added $241.63, representing the payment by Harris of a bill rendered the plaintiffs by the Matanuska Valley Farmers Co-operating Association, and $200 for a sprayer, making a total indebtedness of $9,705.63. As against this, Harris admits he owes the plaintiffs $4,996.80 for potatoes and that he received, under that provision of the contract requiring the application of one-half of the income from products, other than potatoes, of the Newby farm, $3,105.05. The Court has already found that Harris discarded potatoes that met the specification of "field run" and that these amounted to 25% of the quantity of potatoes taken, the value of which would be $1,249.20. Subtracting the sum of these, $9,351.05, from $9,705.63, leaves as the amount due Harris $354.58, for which defendant is entitled to judgment.